## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SYLVIA SCOTT LEE** | **CIVIL ACTION** |
| **VERSUS** | **No.  08-1100** |
| **SAFECO INSURANCE COMPANY OF AMERICA** | **SECTION:  I/3** |

### ORDER AND REASONS

Before the Court is a motion filed on behalf of defendant, General Insurance Company of America ("GICA"), to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for, respectively, lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.[1]  For the following reasons, GICA's motion to dismiss is **DENIED**.

### *BACKGROUND*

Plaintiff Sylvia Scott Lee ("Lee") owned, as mortgagor, immovable property at 1306 Arts Street in New Orleans, Louisiana.[2]  Lee alleges that during Hurricanes Katrina and Rita, the property was severely damaged by wind and rain.[3]  She submitted a proof of loss to GICA under an insurance policy covering the property issued by GICA.[4]  Lee alleges that, despite receiving a proof of loss, GICA failed to timely initiate loss adjustment, failed to timely make a settlement offer, and failed to timely make a loss payment, all as required by the policy and/or Louisiana

---

[1] R. Doc. No. 13.

[2] R. Doc. No. 1, ¶ 2.

[3] *Id.* at ¶¶ 4, 6.

[4] *Id.* at ¶ 14.

statute.[5]

On August 29, 2007, plaintiff filed a petition for damages in Civil District Court for the Parish of Orleans.  The case was removed to this Court on November 30, 2007, and an amended petition was filed on February 22, 2008.[6]  GICA filed its motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) on May 6, 2008, arguing that plaintiff lacks standing to sue and has not stated a claim upon which relief can be granted because she has no insurance contract with GICA and because she is not a third-party beneficiary to any insurance contract issued by GICA.[7]  GICA attached to its motion a certified copy of a lender-placed insurance policy issued to plaintiff's mortgagee, Ameriquest Mortgage Company ("AMC").

## *LAW AND ANALYSIS*

### I.     Standard of Law

GICA moves to dismiss Lee's claim for lack of standing under Rule 12(b)(1) and failure to state a claim upon which relief can be granted under Rule 12(b)(6).  By arguing that Lee is not insured under any insurance policy it has issued, GICA attacks the merits of plaintiff's claim. "[W]here issues of fact are central both to subject matter jurisdiction and the claim on the merits, [it has been] held that the trial court must assume jurisdiction and proceed to the merits." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004).  The Court will, therefore, decide the motion under a Rule 12(b)(6) standard.  *See Graphia v. Balboa Ins. Co.*, 517 F. Supp. 2d

---

[5] *Id.* at ¶¶ 16-21.  Lee's statutory claims rely upon La. Rev. Stat. Ann. §§ 22:658 and 22:1220.

[6] R. Doc. No. 1.

[7] R. Doc. No. 13-1, mem. supp.

854, 856 (E.D. La. 2007) (reviewing defendant's 12(b)(1) and 12(b)(6) motion under the standard applicable to Rule 12(b)(6)).

A district court can dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey,*197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

"However, '[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . . .'" *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (quoting *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) ("In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . . ."). "'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." *Id.* (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). "'[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations

from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'" *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 156-59 (3d ed. 2004)).

## II.      Analysis

*A.      Consideration of the GICA Insurance Policy*

        As a threshold matter, GICA argues that the Court may consider the insurance policy underlying this dispute, even though it was not attached to the initial complaint.[8]  On a motion to dismiss, a court is limited to the factual allegations contained in the pleadings, including any attachments.  *See Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004) ("Although the court may not go outside the complaint, the court may consider documents attached to the complaint.").  The court may, however, expand its review to consider attachments to defendant's motion to dismiss if the documents "are referred to in the plaintiff's complaint and are central to her claim."  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Access Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (internal quotation mark omitted); *see also Kane Enters. v. MacGregor (USA)*, 322 F.3d 371, 374 (5th Cir. 2003).

        GICA has attached to its motion a "Portfolio Security Policy" (the "Policy") whereby GICA issued insurance on the property to plaintiff's mortgagee AMC.[9]  Plaintiff makes reference

---

        [8] *Id.*

        [9] R. Doc. No. 13, Exhs. A-1-A-4.

to this Policy in her complaint[10] (styled an "Amended and Supplemental Petition for Damages") and the Policy is central to her claims in this action.[11]  Therefore, under *Collins*, the Court will consider the Policy in deciding defendant's motion to dismiss.

B.    *Louisiana Causes of Action under Insurance Contracts*

In Louisiana, a plaintiff may sue under an insurance policy when he is a named insured, additional insured, or third-party beneficiary[12] of the contract.  *See Graphia*, 517 F. Supp. 2d at 856; *see also Harrison v. Safeco Ins. Co. of Am.*, 2007 WL 1244268, at *4 (E.D. La. Jan. 26, 2007) (stating that only parties to the insurance contract, along with direct or third-party beneficiaries are entitled to bring claims against defendant insurers).  "An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties."  *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420 (La. 1988).  A court looks to the language of the policy, itself, to determine whether a plaintiff is either a named insured, additional insured, or third-party beneficiary.  *See Graphia*, 517 F. Supp. 2d at 856.

1.    *Named or Additional Insured*

Under Louisiana law, "absent a contrary statutory provision, actions ex contractu cannot be maintained against a party by an individual who is not party thereto."  *Randall v. Lloyd's Underwriter's at London*, 602 So.2d 790, 791 (La. App. 4 Cir. 1992).   When a plaintiff is not named on the insurance policy, "there is no legal relationship between the Plaintiff[] and the

---

[10] R. Doc. No. 1, ¶ 3.

[11] Plaintiff does not contest the Policy's authenticity.

[12] In Louisiana, a contract to benefit a third party is known as a stipulation *pour autrui*.  *See Paul v. La. State Employees' Group Benefit Program*, 762 So.2d 136, 140 (La. App. 1 Cir. 2000).

Defendant insurer." *Sanchez v. Certain Underwriters at Lloyds, London*, 2008 WL 687200, at

*2 (E.D. La. Mar. 10, 2008). The Policy itself nowhere mentions plaintiff's name and states

without ambiguity that AMC is the named insured.[13]

      Lee appears to concede that she is not named in the Policy and that she is not an

additional insured under the Policy,[14] but maintains that she has a legal relationship with GICA

because the insurance was purchased at her own expense.[15]  In *Kilson v. American Road*

*Insurance Co.*, 345 So.2d 967 (La. App. 2 Cir. 1977), the court ruled that no such legal

relationship was created when the plaintiff reimbursed his lender for insurance premiums on

plaintiff's automobile.  *Id.* at 969 ("The fact that the premium was charged by [the lender] to

[plaintiff] does not create any sort of legal relationship between [plaintiff] and [the insurer] . . .

."). The pertinent facts of *Kilson* are analogous to those before the Court.  Mere payment or

reimbursement of insurance premiums by a plaintiff to an insurance provider does not create a

right to recovery under an insurance policy when plaintiff is not the named insured and is

nowhere named in the policy.  *Cf. Richardson v. Sw. Bus. Corp.*, 2007 WL 4259300, at *2 (E.D.

La. Dec. 3, 2007) (rejecting plaintiff's argument that her payment of premiums on her

mortgagee's insurance policy entitled her to be subrogated to the rights of that mortgagee).

Lee's alleged payment of premiums to GICA does not create an actionable legal relationship.

---

[13] R. Doc. No. 13, Exh. A-1.  On the Declarations page of the Policy, "Ameriquest Mortgage Company" is designated as the "Named Insured Mortgagee."  *Id.*  Plaintiff's name does not appear on that page.

[14] In her opposing brief, Lee does not argue that she was a party to the insurance contract; instead she states that "AMC Mortgage Services [sic] provided Plaintiff with the evidence of insurance for the property at issue."  R. Doc. No. 22, mem. opp'n.

[15] Although not entirely clear on this issue, Lee's opposition memorandum implies that Lee made payments directly to GICA to maintain coverage under the policy.  At other times, Lee's memorandum suggests that she paid increased mortgage payments as a form of reimbursement to AMC for the premiums it paid to GICA.  *Id.*

Because she is not a party to the Policy between GICA and AMC, Lee has no right to recover as a named insured.

2.      *Third-Party Beneficiary*

The Louisiana Civil Code recognizes the creation of a contractual benefit for a third party (or, a stipulation *pour autrui*): "A contracting party may stipulate a benefit for a third person called a third party beneficiary."  La. Civ. Code Ann. art. 1978; *see also* J. Denson Smith, *Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui*, 11 Tul. L. Rev. 18, 33 (1936) ("[T]he true third party beneficiary is never a party to the contract.  He is never a promisee."). The Louisiana Supreme Court recently had occasion to clarify the three criteria to consider in determining whether a valid stipulation *pour autrui* has been created: "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1212 (La. 2006).  For the following reasons, the Court finds that Lee is a third-party beneficiary of the Policy.

i.     <u>Manifestly Clear Stipulation</u>

"The most basic requirement of a stipulation *pour autrui* is that the contract manifest a

clear intention to benefit the third party."  *Joseph*, 939 So.2d at 1212.  The "Agreement" section

of the Policy provides:

> We will provide the Insurance described in this policy in return for
> the premium and compliance by you and the "borrower" with all
> applicable provisions of this policy.[16]

Meanwhile, the "Loss Payment" provision of the Policy's "General Conditions" section

provides:

> We will adjust all losses with you.  We will pay you but in no
> event more than the amount of your interest in the "insured
> location."  Amounts payable in excess of your interest *will be paid
> to the "borrower"* unless some other person is named by the
> "borrower" to receive payment.[17]

This provision clearly stipulates that the portion of any loss payment exceeding the value of

AMC's interest in the property will be paid directly to Lee, as the "borrower" under the Policy.

Interpreting an identical provision in another GICA policy, Judge Barbier of this district

concluded that "[t]his statement is clear and unambiguous, and therefore manifests the clear

intention of the parties to provide this benefit to the third party."  *Martin v. Safeco Ins. Co.*, 2007

WL 2071662, at *2 (E.D. La. July 13, 2007).  The Court agrees, and concludes that the Loss

---

[16] R. Doc. No. 13, Exh. A-2.  References to "you" and "your" throughout the Policy refer to the named insured, AMC.  Further, the Policy defines a "borrower" as follows:

> "Borrower" means the mortgagor or mortgagors of an "insured location"
> indebted under a mortgage held or serviced by you.  As used in this policy,
> "borrower" applies to the "insured location" on which the "borrower" is the
> mortgagor.

*Id.*

[17] *Id.* (emphasis added).

Payment provision manifests a clear intent to benefit the borrower Lee.

      ii.      Certainty as to the Benefit Provided

"To create a legal obligation enforceable by the beneficiary there must be certainty as to the benefit to accrue to the beneficiary." *Joseph*, 939 So.2d at 1212 (quoting *Berry v. Berry*, 371 So.2d 1346, 1347 (La. App. 1 Cir. 1979) (internal quotation marks omitted). Here, the benefit to the "borrower" is certain once a particular condition is satisfied: when the loss payment exceeds the insured's interest in the property. Though it has not yet been established whether this condition is indeed satisfied under the facts of this case, the Court must "construe all factual allegations in the light most favorable to the plaintiffs." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

Lee alleges that Hurricanes Katrina and Rita "severely damaged, destroyed or otherwise rendered the above described properties uninhabitable," while there is no allegation or evidence of the extent of AMC's interest in the property. For purposes of this motion, the Court will therefore assume that any loss payment to Lee could conceivably exceed AMC's interest in the property. *See Peters v. Safeco Gen. Ins. of Am.*, 2008 WL 544226, at *1 (E.D. La. Feb. 25, 2008) (declining to conclude on a motion to dismiss that plaintiff could not "seek payment from Defendant of any amounts payable in excess of [lender's] secured interest in the insured property" when no evidence to the contrary had been presented). The benefit to the "borrower" is sufficiently certain.

      iii.     Benefit Not a Mere Incident of the Contract

Finally, the benefit to the third party "cannot be a mere incident of the contract." *Joseph*, 939 So.2d at 1212. The court's task "is to separate the cases where an advantage has been

stipulated from those where the advantage relied upon is merely an incident of the contract

between the parties." *Id.* at 1212-13 (quoting Smith, *supra*, at 28) (internal quotation mark

omitted).  The Louisiana Supreme Court cited two cases to illustrate when the benefit to a third

party is merely incidental.

    First, in *City of Shreveport v. Gulf Oil Corporation*, 431 F. Supp. 1 (W.D. La. 1975),

*aff'd*, 551 F.2d 93 (5th Cir. 1977), the defendant oil company had contracted with the State of

Louisiana to provide petroleum products to various state agencies and quasi-agencies.  The state

had authorized the plaintiff city to purchase under the contract.  When the oil company did not

fulfill the city's purchase order due to a supply shortage, the city sued the company for breach of

contract.  *Id.* at 1-2.  Though the district court held that the contract did provide some benefit to

the plaintiff, it concluded that the city's advantage was merely an incidental benefit.  The court

explained that the contract did not discharge any legal obligation owed by the state to the city,

the advantage to the city "would not beneficially affect the State," and there was no evidence

that the state intended to confer a benefit on the city.  *Id.* at 4.  Meanwhile, in *Allen & Curry

Mfg. Co. v. Shreveport Waterworks, Co.*, 37 So. 980 (La. 1905), the Louisiana Supreme Court

held that the plaintiff city inhabitant had no right of action under a contract between the

defendant water company and the city.  *Id.* at 987.  A clause stating that the city entered into the

contract "'[i]n consideration of the public benefit and the protection to property'" did not create

"stipulations pour autrui in favor of the inhabitants individually" as all municipal contracts are

entered into with a purpose to benefit the public in some way.  *Id.* at 986.  The provision of water

to the plaintiff was an incidental benefit: "An engagement to furnish water to the city is not an

engagement to furnish water to the inhabitants individually.  The inhabitants could neither

10

demand its performance, nor demand the nullity of the contract because of its nonperformance." *Id*.

In the present case, the benefit to the third party is contained in an express provision of the Policy. The Loss Payment provision clearly contemplates payment to a particular individual, the "borrower," upon the occurrence of a particular event. Unlike the clause in *Allen & Curry*, the provision does not confer benefits generally upon a class of persons, but rather identifies a particular beneficiary. And whereas the petroleum resources available to the state in *City of Shreveport* would be reduced were the city given an enforceable right under the contract, AMC's interest in the property under the Policy is in no way jeopardized by the Loss Payment provision. For Lee to recover under that provision, AMC must first recoup the full value of its interest in the property, a scenario which would materially benefit AMC.[18]

_____

[18] In its supporting memorandum, GICA cites two Alabama cases, *Custer v. Homeside Lending, Inc.*, 858 So.2d 233 (Ala. 2003) and *Surrett v. TIG Premier Ins. Co.*, 869 F. Supp. 919 (M.D. Ala. 1994), for the general proposition that lender-placed insurance policies do not confer benefits on third-party borrowers. The Alabama Supreme Court's analysis in *Custer*, however, concluded that "the [insurance] agreement is neutral as to whether [the lender] may force-place flood insurance in an amount that protects not only its interest but also that of the borrower." *Custer*, 858 So.2d at 249. In *Surrett*, meanwhile, the insurance certificate for an automobile indicated that "all payments for loss will be paid to the lender." *Surrett*, 869 F. Supp. at 924. The certificate expressly stated that "no coverage is provided for [the borrower's] interest or equity in the collateral." *Id.* (internal quotation marks omitted). In contrast to the cases cited, the GICA Policy at issue in this case expressly provides for payment to the borrower for amounts in excess of the insured's interest.

Meanwhile, Lee cites two cases originating in this district, *Anderson v. Safeco Ins. Co.* No. 07-8326 (E.D. La. Jan. 15, 2008) and *Martin v. Safeco Ins. Co.*, 2007 WL 2071662 (E.D. La. July 13, 2007), in which insurance policies identical to the one in this case were interpreted to confer third-party beneficiary status on the borrower. Similarly, *Navarrete v. General Ins. Co. of Am.*, 2008 WL 659477 (E.D. La. Mar. 7, 2008) and *Peters v. Safeco Gen. Ins. of Am.*, 2008 WL 544226 (E.D. La. Feb 25, 2008) reached the same conclusion under identical policy language.

Other Hurricane Katrina cases in this district have involved similar claims brought by mortgagor plaintiffs under lender-placed insurance policies, *see, e.g.*, *Sanchez v. Certain Underwriters at Lloyds, London*, 2008 WL 687200 (E.D. La. Mar. 10, 2008); *Richardson v. Sw. Bus. Corp.*, 2007 WL 4259300 (E.D. La. Dec. 3, 2007). In those cases though, the policies utilized materially different language from the GICA Loss Payment provision. In a case with similar, albeit not identical, language, *Graphia v. Balboa Ins. Co.*, 517 F. Supp. 2d 854 (E.D La. 2007), the court granted defendant's motion to dismiss. However, unlike this case, the record in *Graphia* was sufficiently developed to show that "[t]here is no amount 'due for the loss' that exceeds [the lender's] insurable interest." *Id.* at 857. Finally, *Harrison v. Safeco Ins. Co. of Am.*, 2007 WL 1244268 (E.D. La., Jan. 26, 2007) did involve a GICA-issued policy. Plaintiffs' arguments in *Harrison*, however, focused on the *obligations* imposed on the borrower, rather than any *benefit* conferred upon them by the policy. *Id.* at \*2; *see also id.* ("Plaintiffs admit that they are not

III.     **Conclusion**

Although Lee is not a named or additional insured, the Court concludes that she is a third-party beneficiary of the Policy between GICA and AMC.  Considering the facts of the complaint construed in the light most favorable to Lee, the Court cannot definitively state that she has failed to state a claim upon which relief can be granted.

Accordingly,

**IT IS ORDERED** that the motion to dismiss filed on behalf of defendant, General Insurance Company of America, is **DENIED**.

New Orleans, Louisiana, July 2, 2008.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

named insureds under the policies, but note that the policies place certain obligations upon them as 'borrowers'."). Nowhere in *Harrison* did plaintiffs claim that, nor did the court address whether, the Loss Payment provision, if the policy included one at all, conferred third-party beneficiary status on plaintiffs.